NAME:

DARRYL WHITING

18236 - 038

ADDRESS:

P.O. Box 019001

Atwater CA 95301

or PLACE OF CONFINEMENT & PRISON NUMBER

*Note:* If represented by an attorney, his name, address & telephone number .

*Note:* It is your responsibility to notify the Clerk of the Court, in writing of any change of address



**FILED**

SEP 2 0 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

*United States District Court*

FULL NAME: (Include name under which you were convicted)

DARRYL WHITING        *Petitioner,*

vs.

Hector Rios JR

NAME OF WARDEN(or other authorized person having custody of petitioner)

*Respondent.*

CASE NO: 1:10 CV 1719 GSA (HC)

(To be supplied by the clerk of the United States District Court)

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN FEDERAL CUSTODY
28 U.S.C. § 2241

## INSTRUCTIONS - READ CAREFULLY

This petition shall be legibly handwritten or typewritten. signed by the petitioner, under penalty of perjury. You must set-forth *CONCISELY* the answer to each question in the proper space on the form. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

You must not attach separate pages to this except that *ONE* separate additional page is permitted in answering Question No. 9.

**RECEIVED**

SEP 2 0 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

Upon receipt of a fee of $5.00, you petition will be filed if it is in proper order.

If you are seeking leave to proceed in forma pauperis (without paying the $5.00 fee and other court costs), then you must also execute the declaration on the last page, setting forth information which establishes your inability to pay the fees and cost of the proceedings or to give security therefor. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution. If you prison account exceed $25.00, you must pay the filing fee as required by the rule of the district cour.

When the petition is completed, the *original and two copies* must be mailed to the Clerk of the United States District Court for the

Only one sentence, conviction or parole matter may be challenged in a single petition. If you challenge more than one, you must do so by separate petitions.

Petitions which do not conform to these instruction will be returned with a notation as to the deficiency.

PLEASE COMPLETE THE FOLLOWING: (check appropriate number)

This petition concerns:

1. ☑ a conviction
2. ☑ a sentence
3. ☐ jail or prison conditions
4. ☐ prison discipline
5. ☐ a parole problem
6. ☐ other

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY



## PETITION

1. Place of confinement _____

2. Name and location of court which imposed sentence **U. S District Court**
   **For the District of Massachusetts**

3. The indictment number or numbers (if known) upon which, and the offense or offenses for which, sentence was imposed:
   (a) **No: 90-10313S**
   (b) _____
   (c) _____

4. The date upon which sentence was imposed and the terms of the sentence:
   (a) **10-21-91 Life without Parole.**
   (b) _____
   (c) _____

5. Check whether a finding of guilt was made:
   (a) ☐ After a plea of guilty
   (b) ☑ After a plea of not guilty
   (c) ☐ After a plea of nolo contendere

6. If you were found guilty after a plea of not guilty, check whether that finding was made by:
   (a) ☑ a jury
   (b) ☐ a judge without jury

7. Did you appeal from the judgment of conviction or the imposition of sentence?
   ☑ Yes   ☐ No·

8. If you did appeal, give the following information for each appeal:
   (a)(1) Name of Court **First Circuit Court of Appeals**
   (2) Result **Conviction and Sentence Affirm**
   (3) Date of Result **1994**
   (4) Citation or number of opinion **28 F3d 1296**

---

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

(5)   Grounds Raised *(list each)* _____

    (A) _____

    (B) _____

    (C) _____

    (D) _____

(b)(1)   Name of Court _____

(2)   Result _____

(3)   Date of result _____

(4)   Citation or number opinion _____

(5)   Grounds raised (list each) .

    (A) _____

    (B) _____

    (C) _____

    (D) _____

CAUTION: If you are attacking a sentence imposed under a federal judgment, you must first file a direct appeal or motion under 28 U.S.C. § 2255 in the federal court which entered judgment.

9.   State *CONCISELY* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, attach a SINGLE page only behind this page.

CAUTION: If you fail to set forth all grounds in this petition, you may be barred from presenting additional ground at a later date.

(a)   Ground One **Petitioner is actually Innocent of the charges that he was found guilty of.**

Supporting *FACTS* (tell your story *BRIEFLY* without citing cases or law).

CAUTION: You must state *facts not conclusions* in support of your grounds. A rule of thumb to follow is - who did exactly what to violate your rights at what time or place.

That cousel was ineffective for failing to interview exculpatory witnesse That prosecutor knowingly and intentionally presented coerced and perjured testimony and allowed cooperating witnesses to receive sex visits and drugs. That four of eight cooperating witnesses recant their testimony and Exculpate Petitioner. See attached affidavits and motion for Severance.

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

(b)    Ground Two _____

Supporting *FACTS* (Tell your story *BRIEFLY* without citing cases or law).

_____

_____

_____

_____

_____

_____

(c)    Ground Three_____

Supporting *FACTS* (Tell your story *BRIEFLY* without citing cases or law).

_____

_____

_____

_____

_____

_____

(d)    Ground Four _____

Supporting *FACTS* (Tell your story *BRIEFLY* without citing cases or law).

_____

_____

_____

_____

_____

_____

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

10. Have you ever filed previous petitions for habeas corpus, motions under Section 2255 of Title 28, United States Code, or any other applications, petitions or motions with respect to this conviction? ☑Yes   ☐ No

11. If your answer to Question No. 10 was yes, give the following information:

   (a)(1) Name of Court **U S District Court For the District of Massachusetts**

   (2) Nature of proceedings **28 2255**

   (3) Grounds raised **INEFFective assistance of counsel.**

   _____

   _____

   (4) Result **AFFirMEd**

   (5) Date of Result **October 24th 1996**

   (6) Citation or numbers of any written opinions or orders entered pursuant to each disposition.

   **95·11885-ReK**

   (b)(1) Name of Court _____

   (2) Nature of proceedings _____

   (3) Grounds raised _____

   _____

   (4) Result _____

   (5) Date of Result _____

   (6) Citation or numbers of any written opinions or orders entered pursuant to each disposition.

   _____

12. If you did not file a motion under Section 2255 of Title 28, United States Code, or if you filed such a motion and it was denied, state why your remedy by way of such motion is inadequate or ineffective to test the legality of your detention.

   _____

   _____

   _____

   _____

   _____

   _____

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

13.  Are you presently represented by counsel? ☐ Yes    ☑No

If so, name, address and telephone number _____

Case name and court _____

14.  If you are seeking leave to proceed in *forma pauperis*, have you completed the declaration setting forth the required information?

☐ Yes    ☑No,

WHEREFORE, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on   September  7ᵗʰ  2010
                                    *(date)*

Darrel Whiting
*Signature of Petitioner*

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

**AFFIDAVIT OF ROCHELL BURDEN**

I Rochell Burden being of sound mind, free will, duly sworn, deposes, and states as follows:

1.   I am an unindicted co-defendant in the drug case of United States v. Darryl Whiting, No. 90-1030

2. In 1991 I was informed by an indicted co-defendant, Cheryl Bobbit that she had told AUSA Paul Kelly about my involvement in the drug distribution of the New York Boys and the beating of a girl named Lisa on the instructions of David Waght.

3.   I was told by Cheryl Bobbit that she had made a deal with AUSA Paul Kelly to testify falsely against Darryl Whiting for a recommendation by Kelly to the Judge that she receive probation for her involvement in the drug conspiracy.

4.   I was told by Cheryl Bobbit that AUSA Paul Kelly wanted me to testify before the Grand Jury that I worked as a drug currier for Darryl Whiting, and that he stored and sold drugs in my apartment.

5.   I was told by Cheryl Bobbit that AUSA Paul Kelly said that if I agreed to testify against Darryl Whiting that I would not be charged in the indictment for my involvement in the drug conspiracy nor for the beating of Lisa.

6.   I was told by Cheryl Bobbit that all I had to do was testify that the things I did for David Waight, Ed Jones, and Edward McLamb I instead had done for Darryl Whiting.

7.   I told Cheryl Bobbit that I would think on it.

10

8. Subsequently, I was subpoenaed to appear before the Grand Jury in the case of Darryl Whiting and prior to my appearance I met with AUSA Paul Kelly and TFA Peter Murphy and told that enough information had been provided against me to charge me in the drug conspiracy of the New York Boys and the beating of Lisa.

9. I was then asked by AUSA Paul Kelly had I spoken to Cheryl Bobbit about cooperating with the government in exchange for not being charged. I told him that I had.

10. AUSA Paul Kelly then offered me a deal not to be charged with Lisa's beating and immunity from prosecution for my involvement in the drug conspiracy of the New York Boys in exchange for my testifying before the Grand Jury to being a currier for Darryl Whiting and my knowledge of the New York Boys drug activities.

11. I told AUSA Paul Kelly that I didn't work for Darryl Whiting, that I had worked for Ed Jones and David Waight, and that Darryl Whiting wasn't involved in the distribution of drugs by the New York Boys and that different groups and individuals were selling their own drugs.

12. AUSA Paul Kelly then told me that in order for me to get the deal I would have to testify that I worked for Darryl Whiting and so did everyone else.

13. I then relunctantly entered into the agreement with AUSA Paul Kelly to testify falsely before the Grand Jury against Darryl Whiting.

14. Later, after testifying before the Grand Jury, I was surprisingly subpoenaed by AUSA Paul Kelly to testify in the trial of Darryl Whiting and contacted by Kelly who asked that I come into

his office for a meeting.

15.   At that meeting With AUSA Paul Kelly I told him that I thought I only had to testify before the Grand Jury, and that I didn't want to testify against Darryl Whiting at his trial.

16.   AUSA Paul Kelly told me that our agreement was based on my full cooperation and that my testifying at trial is part of that cooperation. Further, that I didn't really say much about Darryl Whiting before the Grand Jury and that I would have to say more about him at his trial than I did before the Grand Jury. He then told me to say that the things I testified to at the Grand Jury as happening with Ed Jones, David Waight, and Edward McLamb happened with Darryl Whiting.

17.   That I did what AUSA Paul Kelly said and testified falsely against Darryl Whiting at his trial.

18.   That after having been troubled over the years with lying against Darryl Whiting and helping to send an innocent man away for the rest of his life I would now like to recant the following:

19.   That, "I had a conversation with Mr. Whiting about the rental of a room in my apartment. " Tr. 9-137-38. I had that conversation with Ed Jones.

20.   That, " Mr. Whiting said he needed a safe place to keep his money. Tr. 9-139. It was Ed Jones who said that.

21.   That, "Mr Whiting gave me $250 for the room." Tr. 9-139. It was Ed Jones who had given me the money for the room.

21.   That, "I had a discussion with Mr. Whiting about how much it would cost for the room." Tr. 9-139-140. I had that discussion

12

had given me the money.

31.     That, "Mr. Whiting took me and my daughter to get leather outfits made. " Tr. 9-189. It was David Waight who had taken us to get the outfits made.

32.     That, "I would take money to Mr. Whiting in New York." Tr. 9-196,202. It was either David Waight or Edward McLamb who I would take money to.

33.     That, "Mr. Whiting served as a currier of money to New York." 10-6. It was Ed Jones or David Waight who would serve as curriers.

34.     That, "Mr. Whiting asked me to go to D.C. in the Spring of 1988." Tr. 10-7,9. It was David Waight who had asked me to go there.

35.     That, "I took money to Mr. Whiting in New York 8 or 9 times." Tr. 10-13. It was Edward McLamb who I had taken the money to in New York.

        Signed under the pains and penalty of perjury this $\underline{14}$ day of April 2007.

                                        Rochell Burden
                                        Rochell Burden

        Subscribed and sworn to before me this $\underline{14}$ day of April 2007.

                                        Notary Public

My commission expires

/3

## AFFIDAVIT OF CHERYL BOBBIT

I Cheryl Bobbit, being of sound mind, free will, duly sworn, deposes and states as follows:

1.    I am a defendant in the drug case of United States v. Darryl Whiting. No. 90-10313.

2.    I was induced by AUSA Paul Kelly and TFA peter Murphy to testify falsely against Mr Whiting at his trial.

3.    On my arrest I was interviewed by Mr Kelly And Mr Murphy, without the benifit of counsel and asked if I was willing to cooperate with the government for a recommedation to the judge that I be given probation.

4.    I agreed to cooperate and was then questioned by Mr Kelly and Mr Murphy regarding my knowledge and involvement in the charged conspiracy.

5.    During this questioning I was asked by Mr Kelly if I transported drugs for Mr Whiting. I told him no. That I transported drugs for Ed Jones, Arthur Fox, and David Waight.

6.    Mr Kelly then asked me who was selling drugs for Mr Whiting. I told him that no one was selling drugs for Mr Whiting. That different people and groups were selling their own drugs.

7.    Mr Kelly asked me who was in these groups. I told him the names of the people who were in Ed Jones' group, Fox's, Wilson's, and Waight's.

8.    Mr Kelly then asked me if Mr Whiting was the boss or in charge of these groups. I told him no.

9.    Mr Kelly then told me that if I wanted him to make the recommendation to the judge for probation that I would have to say that all of them were working for Mr Whiting.

14

10.    I told Mr Kelly that wasn't true, and he said that if I didn't want to be sent away for a long time and separated from my daughter that I would have to say that.

11.    During my debriefing Mr murphy changed many of my anwsers to his questions to read that Mr Whiting was the person I was talking about, when in fact it was either Ed Jones, David Waght, or Arthur Fox. Afterwards, he had me read and sign the report as being my statements.

12.    Further, I was instructed by Mr kelly and Mr Murphy to use Mr Whiting's name in the place of these individuals when asked questions in the presence of my attorney in preparation of my testimony for trial.

13.    Subsequently, on the instructions of Mr Kelly and Mr Murphy I did perjure myself against Mr Whiting at his trial and would now like to recant the following:

14.    That I had a conversation with Mr Whiting about drug related activity. Tr. 9-31. I had it with Ed Jones.

15.    That Rochell Burden had asked Mr Whiting could I go to New York with her when she went to bring back a package of drugs and he said it was alright. Tr. 9-32,33. It was Ed Jones who she had asked and it was he who said that it was alright.

16.    That Mr Whiting asked me to go to New York with him and that we stayed toghether in a hotel. Tr. 9-34.35. It was David Waight who had asked me to go to New York with him. But he didn't stay with me.

17.    That Mr Whiting had taked some money on a plane in a book bag and then put the money in bags once on the plane. Tr. 9-36. It was David Waght who had done this.

18. That me and Mr Whiting checked into the Royce Hotel and that he called me and said someone was coming to pick me up to give me a package. Tr. 9-37 David Waight had checked me into the hotel and was the one who had called and told me that someone was coming to pick me up to give me a package.

19. That Mr Whiting left me some money in the hotel in New York. Tr. 9-39. It was David Waight who had left me the money.

20. That I delivered or obtained drugs on behalf of the organization. Tr. 9-40. There was no Whiting organization. I did this for different people or groups.

21. That Mr Whiting asked me to go to New York and Baltimore. Tr. 9-41. It was David Waight and Arthur Fox who asked me.

22. That Mr Whiting payed me for taking those trips. Tr. 9-41. It was David Waight and Arthur Fox who payed me for those trips.

23. That Mr Whiting told me I had to go to New York. Tr. 9-43 It was David Waght who said I had to go.

24. That Mr Whiting said he wanted me and Terry to go to New York and come back the same day. Tr. 9-43. It was David Waight who said this to me.

25. That Mr Whiting said he was mad at me and that he was going to kick me in the face. Tr. 9-45,46. It was David Waight who hadd said this.

26. That Mr Whiting asked me to go to Baltimre in 1988. He said he wanted me to go to New York with Fox and then from there to Baltimre. Tr. 9-46,47. It was David Waght whohad asked me this.

27. That Mr Whiting said I was going to bring a gun and we was going to catch a train. Tr. 9-47. It was Arthur Fox who had said this.



28.   That when I asked David Waight why they didn't come get me
that he said I had to ask Mr Witing. Tr. 9-50. David Waight had in
fact said that I had to ask Fox.

29.   That Mr Whiting paid for my trip to New York. Tr. 9-55. It
was in fact either Ed Jones, David Waight, or Arthur Fox.

30.   That they said G's gun. Tr. 9-60. David Waight had said it
was his gun.

31.   That David Waight was accompanied by Mr Whiting when he came
back after we beat up lisa. Tr. 9-71,72. He was accompanied by Ed
Jones.

        Signed under the pains and penalities of perjury this 26th

day of _____July_____ 2007.

                                        _____
                                        Cheryl/Bobbit

Subscribed and sworn to before me this 26th day of July, 2007.

                                        _____
                                        Notary Public

My commission expires
July 27, 2013

## AFFIDAVIT OF WAYNE RUFF

Wayne Ruff, being of sound mind, free will, duly sworn, deposes and states as follows:

1. I am a defendant in the drug case of United States v. Darryl Whiting. No. 90-10313.

2. As a result of being threatened physical harm by codefendant Michael Wilson and instructed and induced by AUSA Paul Kelly to say that Mr Whiting was the leader of the New York boys, I did perjure myself against Mr Whiting at his trial.

3. While at the federal courthouse one day, I was contacted by phone by codefendant Ansur Adams and told that he, Ian Burgess and Michael Wilson were cooperating with the government. And that the government wanted Darryl Whiting to go down as everyones boss. He said that if I wanted to get off with as less time as possible I should get down with the program. I told him that wasn't right. He said that I should think about it.

4. After speaking to Adams I met with Mr Kelly, without the benefit of a lawyer, and asked if I had thought about what I had discussed with Adams.

5. I told Mr Kelly that no one was selling drugs for Mr Whiting and that different crews were selling their own drugs.

6. Mr Kelly told me that if I wanted to get a sentence below the mandatory minimum of ten years that I had to go along with the others and say that we all worked for Mr Whiting.

7. Mr Kelly told me that if I was willing to cooperate that I could get some time by myself with my girlfriend for sex in a room in the courthouse like others have already.

18

8.      I told Mr Kelly that I couldn't just up and say that Mr
Whiting was something that he was not. I had to think about it.

9.      While at the courthouse another time, I was contacted by
phone by codefendant Michael Wilson. He also spoke to me about
cooperating with Mr Kelly. After telling Wilson that I couldn't do
that he threatened me that he would have something done to me
while at Middleton and that he had permission from Mr Kelly to do
whatever He Had to do to get people to cooperate. He said that his
agreement with Mr Kelly was based in part on getting others to
cooperate with Mr Kelly as well.

10.     Subsequently, because of this threat by Wilson I did enter
into a agreement with Mr Kelly to testify falsely against Mr
Whiting and was instructed that when giving information to my
lawyer for the proffer and when questioned by him in front of my
lawyer to say Mr Whiting's name instead of David Waights for things
that had happened.

11.     That because of my perjurous testimony against Mr Whiting, I
would now like to recant the following:

12.     That, I sold drugs with Darryl Whiting. Tr. 12-52. I sold
drugs with David Waight.

13.     That, Darryl Whiting told me to go to the projects and that
they would tell me what to do. Tr. 12-60. David Waight had told me
this.

14.     That Darryl Whiting was my boss. That I was selling drugs for
him. Tr. 12-65. David Waight was my boss. I was selling drugs for
him.

19

15.      That Darryl Whiting and Ruby were members of the crew I was selling drugs with. Tr. 12-73.

16.      That Darryl Whiting presided over meetings that we had at 2 Fort Ave in which it was discussed how people were fucking up the money. Tr. 12-78. **It** was David Waight who had presided over the meeting and Mr Whiting wasn't even there.

17.      That I received cocaine from Darryl Whiting one time. Tr. 12-79. I had received it from David Waight.

18.      That I was visited by Darryl Whiting looking for money when I worked the pack. Tr. 12-84,85. It was David Waight who had visited me looking for money.

19.      That I received a phone call from Darryl Whiting when he was in the Poconos that involved money. Tr. 12-86,88. I had received the call from David Waight.


Signed under the pains and penalties of perjury this ___/3___ day of _May 13th_ 2003. YEAR.

wayne Ruff
wayne Ruff

Subscribed and sworn to before me this __13__ day of May 13th 2003. YEAR

Notary Public

My commission expires

Enrique Licera Jr.
Notary Public, State of New York
#01LI50650605
New York County
Commission Expires 05/20/ 2006

20

SWORN AFFIDAVIT OF WAYNE RUFF

I, Wayne Ruff, understanding the penalty for perjury, being duly deposed and sworn, affirm to be true, that:

1.     I am Wayne Ruff;

2.     That on December 12, 1990, I was arrested and charged in relation to my involvement in the so-called "Darryl Whiting drug conspiracy," United States v. Whiting, No. 90-10313, et. al.

3.     That I subsequently entered into an agreement with the United States Attorney's Office for the District of Massachusetts and agreed to plead guilty to the charge of conspiracy to distribute cocaine;

4.     That as part of the above mentioned agreement with the U.S. Attorney's Office, I agreed to testify against others also arrested in relation to the "Darryl Whiting conspiracy" but who were proceeding to jury trials on the charges returned in the indictment against them;

5.     That prior to my testifying I met with several agents and Assistant United States Attorney Paul Kelly;

6.     That during these meetings with several special agents and AUSA Paul Kelly, I was instructed as to what my testimony was to be;

1

7.    That when I interjected to AUSA Paul Kelly
that what I was being instructed to state on the witness
stand was false, I was informed directly and specifically by
AUSA Paul Kelly that my obtaining a lenient sentence was.
dependent on my testifying as instructed;

8.    That to further secure my untruthful
testimony, AUSA Paul Kelly offered that I could receive
the opportunity to have sexually relations with my girlfriend;

9.    That I was directly informed by other witnesses
expected to testify that they had already had sexual relations
with their respective girlfriends at the U.S. Courthouse in
Boston Massachusetts;

10.    That on one occasion while I was at the
U.S. Courthouse in Boston, I did receive a phone call from
another potential testifying witness, Michael Wilson, and
instructed to "lie and do whatever Paul Kelly tells you;"

11.    That at the time of my arrest and testifying,
I was a crack addict and sought to continue in my addicted
life style; therefore I was easily manipulated and willing
to do whatever was necessary to obtain my release so I could
access and use crack cocaine;

12.    That since my recovery from addiction and
maintaining conscious sobriety I realize the terrible deed I
have helped to commit by falsely testifying against several
individuals and thereby dishonestly influencing a decision
that caused wrongful incarceration;



2

That I make and swear to these statements as being truthful and correct.

That no force, threat or promise of compensation has been made to me or bore on my will and intent in making the statements contained herein, only that I need to free my conscious ot the nefarious wrong I contributed to by giving the false testimony that resulted in the imprisonment of my fellow man.

I am available and willing to present the testimony herein and any further statements concerning these facts in a court of law or any other tribunal.

Signed: _Wayne a. Ruff_

SWORN TO AND SUBSCRIBED BEFORE ME
THIS **25** DAY OF **April**, 2000

NOTARY PUBLIC

ORTNER V. MURRAY
NOTARY PUBLIC, STATE OF NEW YORK
01MU4802073
QUALIFIED IN QUEENS COUNTY
MY COMMISSION EXPIRES MARCH 30

23

## AFFIDAVIT OF ANTHONY SAMUELS

I, Anthony Samuels, state as the truth and, with full understanding of the penalty for perjury the following:

(1).   In April 1990, I came to Boston, Orchard Park;

(2).   In April of 1991, I was arrested and charged in relation to my involvement in the Darryl  Whiting drug conspiracy. United States V Whiting, No. 90-101313, et al;

(3).   I entered into an agreement with  the assistant U.S. Attorney Paul Kelly, Robert Iuliano and Paul Kelly's sceretary. This took place before the start of the trial against Mr. Whiting and five or six other co-defendants;

(4).   I agreed to testify against others also arrested in the Darryl Whiting conspiracy as part of my plea agreement;

(5).   That, on numerous occasion I mentioned that the information I was being instructed on was not true.  I was informed my lenient sentence depended on my testifying as instructed;

(6).   That, Michael Wilson, A.K.A. Born was used by the prosecutor Paul Kelly to intimidate  and coach everyone on how to go along with the program.  Michael Wilson told me he was instructed by Paul Kelly and that he could use force to intimidate, to get people to co-operate in this case;

(7).   That, Michael A.K.A. Born was allowed to come in from the street with video tapes and food.  He also brought us drugs and money and gave it to everyone that was testifying in the trial that was co-operating.  His brother Steven Wilsin, A.K.A. Beanie, Ansar Adams, A.K.A. Great God, Robert Little, A.K.A. Black, Wayne Ruff, A.K.A. Shakim and Lonni Avant all did get drugs from Born-Michael Wilson;

(8).   That, Michael Wilson-Born, was allowed to maintain communication with all co-operating co-defendants via the prosecutor's office.  He, Michael Wilson would call the prosecutor's office from the safe house and the connection would be made to talk direct;

(9).   That, Michael Wilson, A.K.A. Born called me at the court house, threatening me that if I don't continue to co-operate I know what will happen to my life;

(10).   That, Michael Wilson-Born did make a call to the holding pen to intimidate Wayne Ruff-Shakin, who was in holding waiting to testify in the Whiting trial;

1

(11).   That, Michael Wilson-Born, Ian Burgess and Lonni Avant-Jay-Von were all being kept at the same safe house;

(12).   That, Ian Burgess told me on the phone, he and Michael Wilson were talking about the Whiting case.   Several sales were made by Michael Wilson-Born, from the barber shop.   They were made by the "Laid Back Crew" which was Born's crew.   Ian told Born (Michael Wilson) he was lying cause he (Ian) was around at the time and there was no work in project for about two weeks;

(13).   That, Ian Burgess told me Michael Wilson did threaten to kill him while he was in the bathroom at the safe house, if he didn't go along with the program and testify at trial;

(14).   That, Ian Burgess told me Michael Wilson-Born, Lonni Avant-Jay-Von, was at the safe house discussing how they were going to put sales on Whiting and other members that were down with the "Laid Back Crew";

(15).   That, Michael Wilson-Born did tell Ian Burgess, "Get with the program", he wants G-Darryle Whiting, and everybody that don't co-operate is going down with him whether they had something to do with drug dealing or not, so if  you don't know something make up a lie or whatever but you got to implicate everybody;

(16).   That, Steven Wilson-Beanie, Robert Little-black, Ian Burgess, Ansar Adams-Great God all did engage in sexual activity at various times in the "special room" at the court house;

(17).   That, one occasion Steven Wilson A.K.A. Beanie did return from court visit with weed (marijuana).   He was laughing, telling me to smell this, (trying to put his hands and fingers in my face).   He said he was with his girl;

(18).   That, Ansar Adams-Great, and Steven Wilson-Beanie did return from court with cash money and drugs.   We did get high on every occasion that one of us came back with drugs;

(19).   That, When I first arrived at Middleton jail it was not my intention to co-operate with the government;

(20).   That, my co-operation in this case was gained through force and intimidation by James Diggs-Lil Born, Steven Wilson-Beanie and Ansar Adams-Great God, and Michael Wilson-Born who was the leader and influencer of us all;

(21).   That, Steven Wilson-Beanie and Ansar Adams-Great, did come to my cell at middleton and threaton my life with a razor to my neck to let me know they mean business and I must co-operate. "Get down with the program".

(22).   That the above, Beanie, and Great did escort me to the telephone to speak with the prosecutor.   I did at that time



agree to co-operate, under threat;

(23). That, as a privilage, before, during and after the Whiting trial, we were allowed to use the special room at the court house to chill-out alone, unsupervised. Various co-defendants were having sexual contact with their girlfriends on many occasions;

(24). That, the jewelry taken from the defendants in this case and confiscated as evidence during the trial was left in the special room with the co-operating co-defendants, Michael Wilson, Steven Wilson, Ansar Adams and me, Anthony Samuels;

(25). That, during our visits to the court house special room we would take the jewelry out of the plastic bag and ware it, parading around the room;

(26). That, eventually some jewelry was stolen by Michael Wilson-Born and Steven Wilson-Beanie also Ansar Adams-Great;

(27). That, with regard to my being forced to co-operate I can produce witnesses that were aware of what was going on and who were also incarcerated at the time, in Middleton, to further prove this did in fact happen as I have stated;

(28). That, to get away from the pressures and intimidation being placed on me by my co-defendants, I did contact Assn. U.S. Attorney Paul Kelly and explained to him my sutuation. As a result of this conversation I was transferred to a jail in Springfield Massachusetts. Where I remained for a couple of months;

(29). That, I learned later, from Ian Burgess, that my co-defendants at Middleton had spoken to Michael Wilson-Born, and that they had told him I might not be testifying, and that I had asked to be moved;

(30). That, Michael Wilson told me he had spoken with Paul Kelly, the prosecutor and soon after I was returned to Middleton, back with my co-defendants. I refused to go back on the unit with them so I was placed in protective custody for a couple of days and then assinged to a different unit;

(31). That, prosecutor Paul Kelly was aware of the methods being used by Michael Wilson-Born;

(32). That Michael Wilson-Born, was working with full approval of the prosecutor Paul Kelly;

(33). That, prosecutor Paul Kelly knows Michael Wilson-Born's violent criminal history with and in relation to the rest of us. He is very physical, violent and knows karate and Paul Kelly was aware that all of us co-operating were afraid of him. Even his own brother Steven Wilson-Beanie was scared of him;

(34). That, prosecutor, Paul Kelly did allow Michael Wilson



3

Born, to use threats of force and intimidation tactics. This
was told told to me by Michael Wilson himself and reaffirmed on
numerous other times by Ian Burgess, Ansar Adams, and Wayne Ruff;

(35). That, after I agreed to get down with the program, I
was also given the privilege of using the special room. Sometimes
I would go there to chill out and I would meet Ian there and he
would tell me to smell his fingers, which was an indication he
had just had sex;

(36). That, Anthony Samuels did also recieve money, $20.00
cash, given to me by an assistant in the prosecutor's office
which I turned in when I got back to Middleton to be placed in my
commissary account;

(37). That, before testifying on the stand, Michael Wilson,
Lonni Avant and Ansar Adams were sniffing cocaine and they were
high on weed;

(38). That, my understanding of this whole situation is based
on my actual experience. The threats and intimidation done in
this case with regard to each and every co-operating co-defendant
at Middleton was done by the prosecutor Paul Kelly, through the
use of Michael Wilson-Born, he kept us all with the program by
threats and the resources provided by the prosecutor, Paul Kelly;

(39). That, we were all reminded not to worry about remembering
what to say in our testimony because the prosecutor would lead us.
This was told to me directly by Michael Wilson-Born;

(40). That, I was told by Michael Wilson to go along with the
way I was instructed by the prosecutor, "just say yes, agree with
everything and implicate everybody" there that they ask about.
They know what they doing.


I offer this affidavit to the defendats of my own free will,
I swear that all the above mentioned statements are the truth and
no force, threats or intimidation of any kind influenced my coming
forth with the truth about this case.
I am willing to testify and give details to all matters concerning my
statements, in a court of law.

_Anthony Samuel_
signature of affiant's

Sworn to and subscribed before me this date _22nd March_
of our Lord _March_ 2001, _in the County of Essex, City of_
_Ray Brook_ State or New York.

_P. Shell_
THOMAS P. SHELDRAKE
Notary Public, State of New York
Qualified in Essex County
My Commission Expires July 15, 2001

UNITED STATES OF AMERICA
                    Plaintiff

                    -V-                                    Criminal No. 90-10313

DARRYL WHITING
                    Defendant

## AFFIDAVIT

I Renoldo Pledger bieng of sound mind, duly sworn, deposes and says that; I did not work security or as an enforcer for a cocaine distribution organization lead by DARRYL WHITING. Nor was DARRYL WHITING the leader, organizer, or supervisor of the alleged New York Boys cocaine distribution organization. Various individuals and groups of people, from our neighborhood in New York were in Boston selling their own cocaine, and would use his name to do so.

A lot of people, including several alleged co-conspirators, assumed that DARRYL WHITING was the overall boss of the New York Boys, and was lead to believe so by others, for control and respect. Also because of his business association with David Waight, and the influence that he had with the New York Boys, and gangs in the community, out of that respect they had for him. because of the things he was trying to do for the community

I was willing to testify to this under oath, subjected to the penalties of perjury, if our joint trial had been severed, and I was called to testify in DARRYL WHITING'S behalf.

Respectfully submitted

State of Indiana
                    SS:
County of Vigo
Before me the undersigned, a Notary Public for Vigo County, State of Indiana, personally appeared Renaldo Pledger and being first duly sworn by me upon his oath, says that the facts alleged in the foregoing instrument are true. Signed and sealed this 14th day of September 1994.

Joseph M. Wheatley, Notary Public   Commission Expires 10/12/9?
Joseph m wheatley

28

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA
                    Plaintiff


          -V-                                    Criminal No. 90-10313-S


DARRYL WHITING
                    Defendant


## AFFIDAVIT

I Andrew Shabazz being of sound mind , duly, deposes and saids that;
I did not work for a copaine distribution organization lead by DARRYL
WHITING. Nor to the best of my knowledge, was he the leader, organizer,
or supervisor of the alleged New York Boys cocaine distribution organization
Various indivivuals and groups, from his neighborhood in New York were in
Boston selling their own cocaine.

A lot of people just assumed that all the New York Boys worked for
DARRYL WHITING, one way or another. And because of his business association
with David Waight, and the influence he had with the New York Boys and
gangs in the Roxbury, Dorchester areas, out of the respect they had for
him for providing entertainment and recreation for the community.

I was willing to testify to this under oath, subjected to the
penalties of perjury, if I had been called to testify at trial in his
behalf.

                                                  Respectfully submitted

Sworn To Before Me On This;


17 Day Of September, 1994.
Michael A. Dowery
Vigo County
Commission Exp
October 31, 1995

UNITED STATES OF AMERICA
                    Plaintiff

                    -V-                          Criminal No. 90-10313

DARRYL WHITING

_____ Defendant

## AFFIDAVIT

I Kevin Kempt being of sound mind, duly sworn, deposes and says
that; I did not work security or as an enforcer for a cocaine distribution
organization lead by DARRYL WHITING. Nor was DARRYL WHITING the leader,
organizer or supervisor of the alleged New York Boys cocaine distribution
organization to the best of my knowledge. Various individuals and groups
of people form our neighborhood in Corona New York were in Boston selling
their own cocaine, and would use his name to do so.

A lot of people, including several alleged co-conspirators, assumed
that DAR YL WHITING was the overall boss, and was lead to believe so by
others for control and respect. Also because of his association with ¨
David Waight, and the influence that he had with the New York Boys, and
gangs in the Roxbury, Dorchester areas, out of that respect that they had
for him, because of his achievements. And things that he was doing for the community.

I was willing to testify to this under oath, subjected to the
penalties of perjury, if I had been called to testify in his behalf.

                                                Respectfully submitted
WILLIAM D. MONSELL                               Kevin Kempt

Sworn To Me This;
9TH Day of NOVEMBER 1994.

30

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA
                    Plaintiff


            -V-                                    Criminal No. 90-10313


DARRYL WHITING

                    DEFENDANT


## AFFIDAVIT


I Robert Moreira being of sound mind, duly sworn, deposes and says that; I did not work security or as an enforcer for a cocaine distribution organization lead by DARRYL WHITING. Nor was DARRYL WHITING THE LEADER, organizer, or supervisor of the alleged New York Boys cocaine distribution organization. Various individuals and groups from our neighborhood in New York were in Boston selling their own cocaine.

A lot of people, including several alleged co-conspirators, assumed that DARRYL WHITING was the overall boss of the New York Boys because of his association with DAVID WAIGHT and EDWARD MCLAMB. And because of the several businesses that he owned.

I was willing to testify to this under oath, subjected to the penalty of perjury, if I had been called to testify in DARRYL WHITING'S behalf.


Authorized by the Act of July 7,
1955, as amended to administer
oaths (18 USC 4004).
Case Manager.

                                               Respectfully submitted

                                               Robert Moreira


Sworn To Before Me This;

16 Day Of _March_, 1995.


31

**Darryl Whiting**

Vs.

**United States Of America**

_____

## Affidavit

I, **Sean Dixon**, being of sound mind and duly sworn, depose
and say: Darryl Whiting was not the leader, organizer or
supervisor of the alleged New York Boys cocaine distribution
organization.

I was willing to testify to this on his behalf had our
joint trial been severed.

Respectfully submitted,

Sean Dixon
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Sean Dixon

Sworn to before me

this __13th__ day of __December__, 1996.

Debrah Mitchell

DEBORAH MITCHELL
Notary Public, State of New York
No. 01MI5013378
Qualified in Essex County
My Commission Expires July 15, 19__17__.

3)

**Darryl Whiting**

    **Vs.**

**United States Of America**

_____  _____

## Affidavit

    I, **Steven Wadlington**, being of sound mind and duly sworn, depose and say: Darryl Whiting was not the leader, organizer or supervisor of the alleged New York Boys cocaine distribution organization.

    I was willing to testify to this on his behalf had our joint trial been severed.

Respectfully submitted,

Steven Wadlington

and subscribed
Sworn to before me Deborah Mitchell
this 13th day of December, 1996.

Deborah Mitchell.

DEBORAH MITCHELL
Notary Public, State of New York
No. 01MI5013378
Qualified in Essex County
My Commission Expires July 15, 19 97.

33

**Darryl Whiting**

     Vs.

**United States Of America**

_____

## Affidavit

    I, **Edwin Carmichael**, being of sound mind and duly sworn,
depose and say: Darryl Whiting was not the leader, organizer or
supervisor of the alleged New York Boys cocaine distribution
organization.

    I was willing to testify to this on his behalf had our
joint trial been severed.

<div align="right">Respectfully submitted,</div>

<div align="right">Edwin Carmichael</div>

Sworn and subscribed to before me

this 13th day of December, 1996.

Deborah Mitchell

DEBORAH MITCHELL
Notary Public, State of New York
No. 01MI5013378
Qualified in Essex County
My Commission Expires July 15, 19 97

34

DARRYL WHITING

    Vs.

UNITED STATES OF AMERICA

---

### Affidavit

I,WILLIAM BOWIE, being of sound mind and duly sworn,

depose and say: Darryl Whiting was not the leader, organizer or

supervisor of the alleged New York Boys cocaine distribution

organization.

  I was willing to testify to this on his behalf had I

been asked.

<div style="text-align: right;">

Respectfully submitted,

WILLIAM BOWIE

</div>

Sworn and subscribed to before me

this 13th day of December ,1996

Debrah Mitchell .

**DEBORAH MITCHELL**
Notary Public, State of New York
No. 01MI5013378
Qualified in Essex County
My Commission Expires July 15, 19 97.

35

Motion For Serverance

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

. . . . . . . . . . . . . .

UNITED STATES OF AMERICA

v.                                             .  Criminal No. 90-10313-WF

1.  DARRYL WHITING, a/k/a "G"
    a/k/a "GOD", a/k/a "RAH"
2.  EDWARD McLAMB
3.  EUGENE NOBLE, a/k/a "RASANN",
    a/k/a "DA KIM"
4.  MARVIN WISE, a/k/a TERRAMCE
    FELDER, a/k/a "EAZ"
5.  DAVID WAIGHT, a/k/a "DIVINE"
6.  TIMOTHY WORMACK, a/k/a
    "HIGHTOP"
7.  STEVEN WILSON
8.  MICHAEL WILSON, a/k/a "BORN"
9.  JAMES DIGGS, a/k/a "LITTLE
    BORN"
10. PAUL DAVIS, a/k/a "BIG BORN"
11. RAYMOND WARD, a/k/a "LA"
12. TYRONNE PERRY
13. LOLITA HUNTER
14. IAN BURGESS a/k/a IAN FOREMAN
15. PHAEDRA BREWTON, a/k/a "FAY"
16. LONNIE AVANT, a/k/a "QUINCY",
    a/k/a "LITTLE G"
17. SEAN DIXON, a/k/a MICHAEL
    WHITE a/k/a "BAILEY"
18. KENT YARDE, a/k/a "DOC"
19. EDWIN CARMICHAEL, a/k/a
    "FREEDOM"
20. EUGENE VICTOR, a/k/a "JAY"
21. CECIL WANGOON, a/k/a "POLO"
22. CHERYL DEANE BOBBIT, a/k/a
    CHERYL BABBIT, a/k/a MALIGUA
    JOHNSON
23. ANDREW SHAPAZZ, a/k/a "PRINCE".
24. TINA BROWNE
25. KENNETH WAY
26. KENNETH TERRY
27. JOHN DOE, a/k/a "BLACK"
28. JOHN DOE II, a/k/a "MOHAMMAD"
29. JOHN DOE III, a/k/a "GREAT"
30. JOHN DOE IV, a/k/a "MASTER
    JONES"
31. JOHN DOE V, a/k/a "SUPREME"

. . . . . . . . . . . . . . .

## MOTION FOR SEVERANCE

NOW COMES the defendant, Darryl Whiting, and hereby moves
that this Court, pursuant to Rules 8(b) and 14 of the Federal
Rules of Criminal Procedure and the Sixth Amindment of the United
States Constitution grant him a severance in the above-captioned
matter and order a separate trial on the grounds that the
government will rule to place substantial reliance on statements
of co-defendants in seeking to prove its case against him.  Many
of these co-defendants are willing to provide testimony at a
separate trial that is exculpatory of the defendant, and it is
expected that he will offer a defense that is inconsistant with
the defenses advanced by his co-defendants.

Alternatively, the defendant requests that this Court conduct
a hearing and, pursuant to that hearing, order appropriate
reactions to statements of co-defendants that include direct and
incriminating accusations against the defendant which would, in
the absence of the testimony of the declarant, provide
incriminating evidence not subject to cross-examination thus
violating the defendant's rights under the Confrontation Clause to
the United States Constitution.  See <u>Bruton v. United States</u>, 391
U.S. 123, 88 S.Ct. 1620 (1968).

In support of this motion, defendant appends various
statements that are contained within DEA investigative reports
(Forms 6) and have been disclosed to him by the government which
relate to allegations of crime committed within businesses
allegedly run by him or otherwise containing references to the

-2-

defendant made by co-defendants.  The pertinent references have been highlighted for the convenience of the Court.  In addition, there are various consensually recorded conversations of co-defendants that refer by name to the defendant and which are not in furtherance of any conspiracy, which, if offered, would also constitute a violation of defendant's Confrontation Clause rights. The defendant still does not have access to transcripts to review for all specific references made to him by co-defendants, but particular statements prior to any hearing or prior to trial as soon as the transcripts are provided to counsel by the government.

Further, the defendant believes that the majority of his co-defendants are willing to testify on his behalf at his trial if they may do so without waiving their right to refuse to incriminate themselves in the proceedings where their own guilt or innocence will be determined.  The testimony available from his co-defendants would exculpate defendant Whiting and demonstrate various improper tactics utilized by the government in its campaign to gather evidence against him.

Respectfully submitted,

BY HIS ATTORNEYS,

GARY C. CROSSEN
FOLEY, HOAG & ELIOT
One Post Office Square
Boston, MA  02109
(617) 482-1390

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DARRYL WHITING
        Petitioner

   -V-                              CIVIL ACTION NO.
                                    95-11885-REK

UNITED STATES OF AMERICA
        Respondent

## AFFIDAVIT OF PETITIONER DARRYL WHITING

I Darryl Whiting, being duly sworn, states as follows;

1.    I am the Petitioner in the above titled action. I am providing this affidavit in support of my 52 (b) motion in order for the court to make additional findings of facts on the merit of Petitioner's claim that he received ineffective assistance of counsel and/or to alter or amend its judgment.

2.    That the exculpatory witnesses counsel breached his duty to investigate, after being given the names of by Petitioner, and who said that they would testify in Petitioner's defense, are, (1) Renoldo Pledger, (2) Sean Dixon, (3) Edwin Carmichael, (4) Steven Wadlington, (5) Andrew Shabazz, (6) William Bowie, (7) Kevin Kempt, and (8) Robert Morreira.

3.    That Petitioner has submitted affidavits from four of these individuals swearing their willingness to have testified had our joint trial been severed. And affidavits from four individuals swearing their willingness to have testified had they been called on to by counsel.

4.    That these eight (8) individuals, whom Petitioner has since been able to contact, said that they had not been interviewed by Petitioner's counsel, nor to their knowledge had counsel tried to get in contact with them.

4.      That the other exculpatory witnesses that counsel breached his duty to investigate, after being given the names of by Petitioner and who said that they were willing to testify in Petitioner's defense, are (9) Raymond Ward, (10) Lolita Hunter, (11) Ronald Qualls, (12) Keisha Woods, (13) Robert Littles, (14) John Doe V. Supreme (15) Kent Yarde, (16) Master Jones, (17) eugene Victor, (18) Cecil Wagoon, (19) Tina Brown, (20) Kenneth Terry, (21) Kenneth Way, and (22) Tyrone Perry.

5.      That those persons named in 14-22 were droped in a superseding indictment, along with ten (10) distribution offenses charged to Petitioner under Pinkerton, when the prosecution learned that either they were not involved in a conspiracy or were involved in separate conspiracies.

6.      That if needed and afforded time Petitioner could obtain affidavits from several of these individuals, if not from all of them.

7.      That counsel should have interviewed prosecution witnesse Agent Peter Murphy and C.I. Jeffrey Coy, who counsel had agreed to cross examine about exculpatory evidence that David Waight, Marvin Wise, and Kevin Kempt were selling their own cocaine.

8.      That counsel should have interviewed or attempted to interview co-operating witness Michael Wilson, who counsel had agreed to cross examine about Petitioner telling him David Waight and Marvin Wise not to sell C.I. Coy any cocaine and to not get him caught up in it because he didn't want anything to do with it.

9.      That counsel should have interviewed or attempted to interview co-operating witness Steven Wilson, who made the statement to C.I. Coy about Wise selling his own cocaine.

-2-

10. That counsel should have interviewed or attempted to interview the other co-operating witnesses who he agreed to cross examine about how they know that Petitioner was the leader of the alleged organization if he had not hire, organized or supervised any of them, which would have elicited nothing but assumptions and heresay.

11. That Rochelle Burden, Cherly Bobbit, Michael Wilson, Lonnie Avant, and Ansar Adams, five of the eight (8) co-operating witnesese were impeached during trial on cross examination by counsel. And Petitioner has newly discovered evidence that is impeaching on Ian Burgess, and newly discovered Jenks material that will futher impeach Adams.

12. That I received a copy of counsel's conclusionary affidavit from the prosecution dated the 23, day of October 1996 on or about October 26, 1996.

13. That I received a copy of the Court's order denying my 2255 petition dated the 24, day of October 1996, on or about October 27, 1996, which deprived me of time to respond to counsel's conclusionary affidavit.

14. That counsel's assertion in his conclusionary affidavit, that he advnced every defense theory agreed to with Petitioner is absolutely untrue and contradicted by counsel's motion to sever, the records and transcripts of the case, and is disputed by Petitioner's asserted facts in his 2255 petition, exhibits, motions, and amendments.

15. That the dispute in Petitioner's and counsel's affidavits are outside the records of the case and require an evidentiary hearing under 28 U.S.C. 2255 in order for the court to make additional findings of fact on the merits of Petitioner's claim that he received ineffective assistance of counsel and/or to alter or amend its judgment. See

<u>Machibroda v. United States</u> 368 US 487, and <u>Townsend v. Sain</u> 372 US 293.

Petitioner declares (or certifys, verifys or states) under the penalty of perjury that the foregoing is true and correct, 28 U.S.C. 1746. Excuted on January 20, 1997.

Respectfully Submitted

DARKYL WHITING 18236-038
P.O. BOX 1000
Lewisburg PA. 17837

I Darryl Whiting, Hereby certify that a true copy of this motion to amend 52 (b) motion and affidavit of Petitioner was served on the United States Attorney, by depositing an envelope containg the forementioned documents in the U.S. mail with first class postage prepaid to; Richard L. Hoffman AUSA, 1003 Post Office Courthouse Boston Massachusetts 02109.

DARRYL WHITING